**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDY DEOCHAND GOPAUL,<br>*Petitioner*,<br>v.<br>LUIS SOTO, *et al.*,<br>*Respondents*. | Civil Action No. 26-13205 (ZNQ)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on Petitioner Andy Deochand Gopaul's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his detention by U.S. Immigration and Customs Enforcement ("ICE") and seeks immediate release. (ECF No. 1.) Respondents Luis Soto and David Venturella (the "Government") filed a letter regarding detention authority (ECF No. 6), and Petitioner replied (ECF No. 7). For the reasons expressed below, the Court will **GRANT** the Petition.

## I. BACKGROUND

Except where noted, the following facts come from the Government's letter and its exhibits. Petitioner is a native and citizen of Trinidad and Tobago. (ECF No. 6-1 at 1, 3.) He was admitted to the United States at New York on August 31, 2013, on a B-2 nonimmigrant visa, with authorization to remain until February 27, 2014. (ECF No. 6 at 1; ECF No. 6-1 at 3.) He applied for asylum on March 9, 2015, after the visa expired, (ECF No. 6 at 1), and was referred to an Immigration Judge ("IJ") on July 3, 2017. (ECF No. 6-1 at 3.)

On December 19, 2023, the IJ found Petitioner "removable," rather than "inadmissible," under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), a ground ICE characterizes as nonimmigrant overstay. (ECF No. 6-2 at 1; ECF No. 6-1 at 2.) The IJ recorded that Petitioner's asylum application and his request for withholding under the Convention Against Torture were withdrawn without prejudice, granted him withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and ordered him removed to Trinidad and Tobago. (ECF No. 6-2 at 1, 3.) Both parties waived appeal. (*Id.* at 4.)

ICE's chronology of Petitioner's immigration history lists no event between the IJ's order and his arrest. (ECF No. 6-1 at 3.) Petitioner represents that he remained at liberty for nearly three years, (ECF No. 7 at 4), and the Government does not suggest otherwise. On October 7, 2026, ICE officers arrested Petitioner in New York under a Warrant of Removal/Deportation (Form I-205) issued that morning and took him to ICE's Newark Field Office. (ECF No. 6-1 at 2; ECF No. 6-4 at 1.)[1] ICE reports that Petitioner has no criminal history, no gang affiliation, and no application, appeal, or motion pending, (ECF No. 6-1 at 3), and the Government's letter likewise reports that he has "no known criminal history." (ECF No. 6 at 2 n.1.) During processing, an ICE officer "verbally advised" Petitioner "of third country removal to Saint Kitts and Nevis per ERO/HQ Determination" and "also advised" him that "his removal is taking place in the very near future." (ECF No. 6-1 at 4.) Petitioner alleges that he is detained at the Delaney Hall Detention Facility in Newark, New Jersey. (ECF No. 1 at 2 ¶¶ 3–5.)

Petitioner filed the Petition on October 9, 2026, naming as Respondents Luis Soto, the Warden of the Delaney Hall Detention Facility, and David Venturella, whom he identifies as the

[1] The Petition alleges that ICE detained Petitioner on October 8, 2026. (ECF No. 1 at 1–2.) ICE's records and the Government's letter give the date as October 7, 2026. (ECF No. 6 at 1; ECF No. 6-1 at 2.) The discrepancy is immaterial, and the Court uses the date in ICE's records.

Acting Director of ICE. (ECF No. 1 at 2 ¶¶ 5–6.) The Petition asserts a due process claim based on the denial of an opportunity to challenge his continued detention (Count One), a substantive due process claim (Count Two), and a claim under the Administrative Procedure Act ("APA") (Count Three), and it asks the Court to order his immediate release. (*Id.* at 4–7.) Petitioner also moved for an order to show cause. (ECF No. 2.)

On October 9, 2026, the Court enjoined the Government from transferring Petitioner from New Jersey pending further order, (ECF No. 4), and directed it to file a two-page letter regarding Petitioner's criminal history and detention authority. (*See* ECF No. 6 at 1.) The Government filed its letter on October 13, 2026, with four exhibits: Petitioner's Form I-213, the IJ's December 19, 2023 order, a Form I-294 warning and an instruction sheet, and the Form I-205 warrant. (ECF Nos. 6, 6-1, 6-2, 6-3, 6-4.)

The Government advises that, according to ICE, Petitioner "is subject to a final order of removal and remains detained under 8 U.S.C. § 1231(a)." (ECF No. 6 at 1.) It notes that § 1231(a) establishes a ninety-day "removal period" during which detention is mandatory, that the Government "may further detain certain categories of aliens" after that period, and that detention for up to six months after a removal order is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (ECF No. 6 at 1–2.) The Government reports that Petitioner had been detained for seven days when it filed its letter, and it argues that his challenge is therefore premature. (*Id.* at 2.)

Petitioner responds that the removal period expired years ago, that the Government has not shown that he falls within any category of noncitizens whose detention § 1231(a)(6) authorizes, and that the six-month presumption cannot supply authority the statute withholds. (ECF No. 7 at

1–5.) He asks the Court to order his release within twenty-four hours or, alternatively, to hold a bond or custody hearing within seven days. (*Id.* at 5.)

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas proceedings under § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688.

Section 1231(a) governs the detention of a noncitizen who has been ordered removed.[2] The Government must remove the noncitizen within ninety days, a period the statute calls the "removal period," 8 U.S.C. § 1231(a)(1)(A), and it must detain the noncitizen "[d]uring the removal period," *id.* § 1231(a)(2). The removal period "begins on the latest of" three dates: the date the order of removal becomes administratively final; the date of a court's final order, if the order is judicially reviewed and the court stays removal; and the date the noncitizen is released from non-immigration detention or confinement. *Id.* § 1231(a)(1)(B). It is extended if the noncitizen fails or refuses to make timely application in good faith for travel documents or acts to prevent his removal. *Id.* § 1231(a)(1)(C). A noncitizen who is not removed within the removal period "shall be subject to supervision under regulations prescribed by the Attorney General" pending removal. *Id.* § 1231(a)(3). Detention beyond the removal period is the exception. Section 1231(a)(6) provides that "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of

---

[2] Section 1231 refers to the "Attorney General," but the authority it describes now resides in the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005); 6 U.S.C. § 557.

supervision in paragraph (3)." *Id.* § 1231(a)(6). That provision thus reaches three categories of noncitizens. *See Clark*, 543 U.S. at 377 ("By its terms, this provision applies to three categories of aliens . . . ."). The implementing regulation of the Department of Homeland Security ("DHS") draws the same lines. *See* 8 C.F.R. § 241.4(a)(1)–(4) (applying its custody-review procedures to a noncitizen ordered removed who is inadmissible under section 212 of the INA, who is removable under section 237(a)(1)(C), (a)(2), or (a)(4), or whom the decision-maker determines to be unlikely to comply with the removal order or a risk to the community).

In *Zadvydas*, the Supreme Court read an implicit limitation into § 1231(a)(6): the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. To guide the lower courts, the Court recognized a six-month period of presumptively reasonable detention, after which, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

## III. <u>DISCUSSION</u>

### A. Jurisdiction and the Question Presented

As a threshold matter, the Court confirms its jurisdiction. Petitioner alleges, and the Government does not dispute, that he is detained at a facility in this District, and the Warden of that facility, Respondent Soto, has appeared through counsel. (ECF No. 1 at 2 ¶¶ 3–5; ECF No. 5.) *See Rumsfeld v. Padilla*, 542 U.S. 426, 435, 442–43 (2004). Nor does 8 U.S.C. § 1252, including its channeling provisions, divest the Court of jurisdiction. Section 2241 remains available as a forum for statutory challenges to post-removal-period detention, *Zadvydas*, 533 U.S. at 688, and

that is what Petitioner brings. The question he presses does not require the Court to review his order of removal, the decision to execute it, or the designation of any country of removal. He asks only whether a statute authorizes his present custody, a question that does not depend on the validity of the removal order and that no petition for review of that order could resolve. *See Khalil v. President, United States*, 164 F.4th 259, 277 (3d Cir. 2026) (recognizing that "some claims can be detention-specific," such as claims about the length and conditions of confinement, but not a detention claim that "just repackages" challenges to removal), *reh'g en banc denied*, Nos. 25-2162 & 25-2357 (3d Cir. May 22, 2026). In two decisions on which the Government relies, another judge of this District applied *Khalil* to decline jurisdiction over claims that re-detention was arbitrary or improper or that the underlying removal order was defective. *See Cakan v. Soto*, No. 26-8167 (BRM), 2026 WL 2150657 (D.N.J. July 27, 2026); *Salgado Tarazona v. Becker-Rowley*, No. 26-8152 (BRM), 2026 WL 2150653 (D.N.J. July 27, 2026). Petitioner's claim is of a different kind.

The statutory question is also properly before the Court. Although the Petition's counts sound in due process and the APA, the Petition challenges "the lawfulness of his detention," (ECF No. 1 at 1), and alleges that the Government acted "in excess of statutory jurisdiction, authority, or limitations." (*Id.* at 6–7 ¶ 20.) The Court's October 9, 2026 Order directed the Government to address detention authority, (ECF No. 6 at 1), and the Government answered by invoking § 1231(a) as the source of that authority. Petitioner's Reply responded to that invocation. (ECF No. 7 at 1–5.) Because § 2241(c)(3) reaches custody in violation of the "laws . . . of the United States," the Court must decide whether the statute the Government invokes authorizes Petitioner's custody.

**B. The Removal Period Expired in 2024**

The Government's reliance on § 1231(a) requires the Court to separate the removal period, during which detention is mandatory, from the authority to detain once it has ended. The Government represents that the IJ's December 19, 2023 order is administratively final because Petitioner did not appeal. (ECF No. 6 at 1.) The order reflects that both parties waived appeal that day. (ECF No. 6-2 at 4.) Whether the order became final on waiver of appeal or on expiration of the time to appeal, *see* 8 C.F.R. §§ 1003.39, 1241.1(b)–(c), the ninety-day removal period expired in 2024. The Government identifies no judicial stay of removal, no release from non-immigration confinement, and no failure or refusal by Petitioner that would have postponed or extended the period. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)–(iii), (C). To the extent the Government suggests that Petitioner's October 7, 2026 arrest began a new removal period, the statute forecloses the suggestion, because an arrest is not among the events that start one. *See id.* § 1231(a)(1)(B). Another judge of this District has measured the removal period from the date the removal order became administratively final, or was reinstated, rather than from a later immigration arrest. *See Santamaria-Mejia v. ICE*, No. 26-7437 (CPO), 2026 WL 2018107, at *3–4 (D.N.J. July 13, 2026); *Egharevba v. Benzel*, No. 26-10628 (CPO), 2026 WL 2655018, at *3–4 & n.3 (D.N.J. Sept. 9, 2026). Petitioner is therefore not within the removal period, and the mandatory-detention provision of § 1231(a)(2) does not authorize his detention.

**C. Section 1231(a)(6) Does Not Authorize Petitioner's Detention on This Record**

The question, then, is whether § 1231(a)(6) authorizes Petitioner's detention beyond the removal period. It does so only if Petitioner falls within one of the categories that provision enumerates. The Government does not argue otherwise; its letter recognizes that after the removal period the Government "may further detain certain categories of aliens." (ECF No. 6 at 1.) But the

Government has not identified a category that applies to Petitioner. Its own exhibits do not support the first two categories and reflect no determination under the third.

First, Petitioner is not "inadmissible under section 1182." A noncitizen who has been admitted to the United States is "removable" if he is "deportable under section 1227," while a noncitizen who has not been admitted is "removable" if he is "inadmissible under section 1182." 8 U.S.C. § 1229a(e)(2). The Government's own exhibits show that Petitioner entered at a New York port of entry on a B-2 visa and "was admitted until 02/27/2014," (ECF No. 6-1 at 3), and the IJ found him "removable," not "inadmissible." (ECF No. 6-2 at 1.) The Government itself describes him as "removable under 8 U.S.C. § 1227." (ECF No. 6 at 1.) Its passing reference to noncitizens who are "inadmissible" under § 1182, (*id.* at 1–2), identifies no ground of inadmissibility that applies to Petitioner.

Second, the record does not show that Petitioner is "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)." The only ground of removability that the IJ's order reflects is § 1227(a)(1)(B), which concerns a noncitizen present in the United States in violation of law. (ECF No. 6-2 at 1.) Congress listed subparagraph (C) of § 1227(a)(1), which addresses nonimmigrants who fail to maintain their status or comply with its conditions, but not subparagraph (B), and DHS's regulation does the same, 8 C.F.R. § 241.4(a)(2). Nothing in the text of § 1231(a)(6) reaches a noncitizen found removable only under subparagraph (B), unless he falls within another category the provision lists. The Government does not contend that Petitioner is removable under subparagraph (C), and nothing in the record suggests that he was found removable under it.[3] Nor does the Government contend that Petitioner is removable under §

[3] The Court is mindful that *Zadvydas* described § 1231(a)(6) as applying "broadly to aliens ordered removed for many and various reasons, including tourist visa violations." 533 U.S. at 691. That description illustrates the provision's breadth. It did not address which ground of removability a particular noncitizen had been found to have, and both petitioners in *Zadvydas* had been convicted of crimes before they were ordered removed. *See id.* at 684–85. A tourist

1227(a)(2) (criminal offenses) or § 1227(a)(4) (security and related grounds). ICE reports that he has no criminal history, (ECF No. 6-1 at 3; *see* ECF No. 6 at 2 n.1), and nothing in the record suggests a security-related ground.[4]

Third, the record reflects no determination that Petitioner is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). The Government's letter does not mention such a determination, and none appears in its exhibits. *See* 8 C.F.R. § 241.4(a)(4) (applying to a noncitizen whom "the decision-maker determines is unlikely to comply with the removal order or is a risk to the community"). The Warrant of Removal directs officers to take Petitioner into custody and remove him under the final order, (ECF No. 6-4 at 1); ICE's report records that he has no criminal history and no gang affiliation, (ECF No. 6-1 at 3); and the warning and instruction forms ICE served on him, (ECF No. 6-3), reflect no such determination. The instruction sheet notes that Petitioner "Refused to Sign" it on the day of his arrest, (*id.* at 2), but the Government does not contend that the notation reflects a determination that he is unlikely to comply with the order of removal, or that it extended a removal period that had expired more than two years earlier. The Government invoked § 1231(a) as the source of its authority to detain Petitioner, and any such determination would be in its possession, not his.

---

visa violation may well fall within § 1231(a)(6) when the noncitizen is removable under § 1227(a)(1)(C)(i), which reaches a nonimmigrant who "has failed to maintain the nonimmigrant status" in which he was admitted, or when the noncitizen is inadmissible under § 1182. The Government invokes neither provision, and the record reflects that the IJ sustained only § 1227(a)(1)(B), (ECF No. 6-2 at 1), the sole charge listed in ICE's report and in the Warrant of Removal. (ECF No. 6-1 at 2; ECF No. 6-4 at 1.)

[4] The Form I-294 served on Petitioner has a box checked that applies to a noncitizen who has been "convicted of a crime designated as an aggravated felony." (ECF No. 6-3 at 1.) On this record, the Court gives that entry no weight. It cannot be reconciled with ICE's report that Petitioner "has no criminal history," (ECF No. 6-1 at 3), or with the Government's letter, which likewise reports "no known criminal history." (ECF No. 6 at 2 n.1.) The record contains no conviction, and the only ground of removability that ICE charged, the Immigration Judge sustained, and the Warrant of Removal recites is nonimmigrant overstay under 8 U.S.C. § 1227(a)(1)(B). (ECF No. 6-1 at 2; ECF No. 6-2 at 1; ECF No. 6-4 at 1.) The Government's letter does not cite the entry, does not contend that Petitioner has a criminal conviction, and does not contend that he is removable on a criminal ground. A notation on a form, unsupported by anything else in the record, is not a determination that Petitioner falls within a category § 1231(a)(6) enumerates. The Court does not decide whether the Government could establish such a ground on a different record.

Because the Government has not shown that Petitioner falls within any category that § 1231(a)(6) enumerates, the statute does not authorize his detention beyond the removal period. The statutory default for a noncitizen who is not removed within that period is supervision, not confinement. 8 U.S.C. § 1231(a)(3).

### D. The Six-Month Presumption Does Not Supply the Missing Authority

The Government's invocation of the six-month presumption does not alter this conclusion. That presumption measures how long detention that § 1231(a)(6) authorizes may continue before it becomes unreasonable; it does not create authority to detain where the statute confers none. *See Zadvydas*, 533 U.S. at 689–90, 699, 701. *Zadvydas* implied a reasonable-time limit into § 1231(a)(6) to avoid the constitutional problem of indefinite detention, *id.* at 689–90, and nothing in the decision suggests that the presumption enlarges the class of noncitizens whom § 1231(a)(6) reaches. The Government identifies no decision holding that the presumption authorizes the detention of a noncitizen who falls outside the categories that § 1231(a)(6) enumerates. The decisions on which it relies hold that a challenge to post-removal-order detention brought within six months is premature. (ECF No. 6 at 2.) *See, e.g.*, *Calle Guaman v. Soto*, No. 26-1783 (ZNQ), 2026 WL 811353, at *2 (D.N.J. Mar. 24, 2026); *Cakan*, 2026 WL 2150657, at *2; *Salgado Tarazona*, 2026 WL 2150653, at *2. In those three decisions, none of the petitioners had been admitted to the United States, and none of the decisions discusses whether the petitioner fell within a category that § 1231(a)(6) enumerates. Petitioner, who was admitted and found removable only under § 1227(a)(1)(B), presents a question those decisions did not address.

### E. The Limits of the Court's Holding

Because the Petition is resolved on this statutory ground, the Court need not decide whether the six-month presumption applies at all to detention that follows years of liberty after a final order

of removal. *Compare Egharevba*, 2026 WL 2655018, at *4–6 (holding the presumption inapplicable in such circumstances), *and Santamaria-Mejia*, 2026 WL 2018107, at *4 (expressing "substantial doubt" that it applies "where the ninety-day mandatory detention period has long expired and there has been no prior detention"), *with* ECF No. 6 at 2 (collecting decisions dismissing claims as premature). The Court likewise does not reach Petitioner's due process claims or his APA claim, (ECF No. 1 at 4–7), or his alternative request for a bond or custody hearing. (ECF No. 7 at 5.)

The Court's holding is limited. Petitioner does not challenge his order of removal, and nothing in this Opinion disturbs it. The Court does not decide whether Petitioner may lawfully be removed to Saint Kitts and Nevis or any other country in light of the grant of withholding, *see* 8 U.S.C. § 1231(b)(3)(A), or whether the Government could lawfully detain him on some other showing. The Court holds only that, on this record, the Government has not shown that 8 U.S.C. § 1231(a) authorizes his detention.[5] The Court's October 9, 2026 Order afforded the Government an opportunity to address detention authority, (ECF No. 6 at 1), and the deficiency identified here appears on the face of the statute and the Government's own exhibits. Further submissions are therefore unnecessary. The Government's conditional request for leave to file a supplemental submission within fourteen days, (ECF No. 6 at 2), which Petitioner opposes, (ECF No. 7 at 5), is moot.

---

[5] The Government does not contend that the INA independently authorizes brief detention incident to the execution of a removal order outside § 1231(a)(6), and the Court does not decide that question. The Court notes only that this record would not support such a contention: it contains no travel document, no departure date, and no evidence of an arrangement with any receiving country. The I-213 states that ICE advised Petitioner of removal to Saint Kitts and Nevis "per ERO/HQ Determination" and that his removal "is taking place in the very near future," (ECF No. 6-1 at 4), but the determination itself is not before the Court.

## IV. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED**. The Government will be ordered to release Petitioner from immigration custody within twenty-four hours, subject to such terms of supervision as 8 U.S.C. § 1231(a)(3) and its implementing regulations authorize, and to file a notice certifying his release within forty-eight hours. The restraint on Petitioner's transfer (ECF No. 4) will remain in effect until his release. Petitioner's motion for an order to show cause (ECF No. 2), to the extent it remains pending, and the Government's conditional request for leave to file a supplemental submission (ECF No. 6 at 2) will be **DENIED** as moot. An appropriate order follows.

Date: November 6, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**